### STARK v. PAYNE, Director General of Railroads.

(District Court, D. Montana. March 7, 1921.)

No. 843.

Railroads ⬤—5½, New, vol. 6A Key-No. Series—Action under Transportation Act removable.

An action of tort brought against the Director General of Railroads, or the agent appointed under Transportation Act Feb. 28, 1920, § 206a, based on a cause of action arising out of the operation of a railroad while under federal control, *held* removable as one arising under the laws of the United States.

At Law. Action by Hilda M. Stark, administratrix, against John Barton Payne, Director General of Railroads. On motion to remand to state court. Denied.

C. E. Carlson and Geo. Y. Patten, both of Bozeman, Mont., for plaintiff.

Keister & Bath, of Bozeman, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for defendant.

BOURQUIN, District Judge. Motion to remand, wherein the issue is whether removal can be had of an action for damages for the wrongful death of an employee, upon a railroad in federal control, alleged to be due to the control's negligence. Plaintiff contends that section 10 of the Federal Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j) forbids removal of actions which, if against the carrier and before control, could not be removed; that being the character of this action by reason of the carrier's local incorporation. She further contends that section 206a of the Transportation Act (Act Feb. 28, 1920, c. 91, 41 Stat. 461) also precludes removal, in that it provides that like actions "may * * * be brought in any court which but for federal control would have had jurisdiction * * * against such carrier."

In the beginning Congress authorized the President, in war time and for and in behalf of the United States, to take, control, and utilize the railroads for governmental purposes, and he did so for near three

months prior to the Federal Control Act of March 21, 1918. Nothing therein indicated any change in the law of torts in relation to the United States and its agencies.

If the Federal Control Act accomplishes such change, to the extent that the United States and its agencies or either of them becomes liable for negligence in the operation of the railroads, and to actions sounding in tort, it is believed, with Nash's Case (D. C.) 260 Fed. 280, that it arises out of section 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾*l*), which provides that the moneys derived from operation are property of the United States, and shall be disbursed "in the same manner as before federal control and for such purposes as * * * are chargeable to operating expenses, * * * and for such other purposes in connection with federal control as the President may direct," and other analogous sections, justifying General Order No. 50, and not, as held by Hines' Case (C. C. A.) 267 Fed. 105, out of section 10.

Whether or not Congress had in mind any such change in the law by the Federal Control Act itself, or left the matter to the President's regulation or to future legislation, is difficult to determine. The act is so devoid of clarity, to put it mildly, that in their very real struggle to arrive at congressional intent, the courts are as excusably as hopelessly at variance—a situation that inspires appreciation of the English system, wherein all bills in Parliament are drafted by a permanent commission learned in the law.

It is true section 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾a) declares the railroads and systems of transportation are in the act called "carriers"; but it is equally true the word "carriers" is therein repeatedly used to denote the corporate or other owner of the railroads, viz.: In section 3 (section 3115¾c), providing for hearings to fix compensation to owners; in section 7 (section 3115¾g), relating to owners' issuance of securities; and in section 10 (section 3115¾j), relating to the President's certification that it is necessary to increase operating expenses to pay owners' compensation. It is also true "carriers" is as often used to denote the physical properties, but not the operator, which is but one, the United States.

Obviously section 10 does not purport to authorize actions in rem against the physical properties as such. If the intent is to leave the matter to the President's regulations, Order No. 50 is such regulation and authorizes such actions, within the mandatory duty imposed by section 12 and the like. If the intent is to leave the matter to future legislation, section 206a, supra, is such legislation, fairly construed, recognizing, creating the right, imposing the liability, changing the law, subjecting the United States to damages for negligence, to all variety of actions arising out of the control's operations, to actions sounding in tort; for the real defendant in interest is the United States, and it pays any adverse judgment.

This is tenable, even though section 206d recognizes like actions may theretofore have been brought, as they in fact were. Holding with Nash's Case, it follows section 10 has no application to the removability

of this and like cases. In reference to section 206a, it is permissive, and not mandatory; it relates to original jurisdiction, which it extends, and not to removal, which it does not restrict. But for it plaintiff might be constrained to sue at defendant's residence or in the federal court.

The action is a new species of the genus of removable cases, and the law of the latter opens to include it. In legal contemplation the United States is the real defendant. The liability is imposed upon it, and it will pay any judgment against defendant. All plaintiff's right is created by federal law, though admeasured by state law. Hence the case arises under the laws of the United States, and is removable, regardless of citizenship. See Macon Co. v. Ry. Co., 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300; Blevins v. Hines (D. C.) 264 Fed. 1008; Westbrook v. Dirctr. General (D. C.) 263 Fed. 211.

Remand is denied.