## UNITED STATES v. SAKHARAM GANESH PANDIT.

(Circuit Court of Appeals, Ninth Circuit. November 1, 1926.)

No. 4938.

**1. Words and phrases.**

"Erroneous" means deviating from law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Erroneous.]

**2. Aliens ⬚68(6)—Judgment granting certificate of naturalization is "final judgment."**

Judgment granting certificate of naturalization is final judgment, conclusive as to all media concludendi, and not affected by correctness of findings supporting it, and it cannot be impeached by showing that it was based on mistake of law.

**3. Courts ⬚92.**

Obiter dictum cannot constitute precedent.

**4. Aliens ⬚68(6)—Judgment granting naturalization held res judicata in suit by government to cancel certificate (Naturalization Act 1906, § 15 [Comp. St. § 4374]).**

Judgment granting naturalization, after right to citizenship had been distinctly put in issue and United States had appeared and contested, not having been modified or reversed, cannot be disputed in suit by United States to cancel certificate under Naturalization Act 1906, § 15 (Comp. St. § 4374).

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Paul J. McCormick, Judge.

Suit under Naturalization Act June 29, 1906, § 15, by the United States against Sakharam Ganesh Pandit. From a decree of dismissal, the government appeals. Affirmed.

See, also, 297 F. 529.

Suit under section 15 of the Naturalization Act, June 29, 1906 (section 4374, Comp. St.), was commenced June 23, 1923, to cancel a certificate of naturalization issued to the defendant on the 7th day of May, 1914. Naturalization is alleged to have been "illegally procured" in that defendant was at all times a high caste Hindu of full Indian blood. The defendant answered by denial, and set up a number of affirmative defenses, all of which, except res judicata or estoppel by judgment, were stricken on motion of the United States.

At the trial the court found the defendant to be a high-class Hindu of the Brahman caste, and of full Indian blood, that he has a status of high social standing in his native country of India; that he attended in India the Pathashala (orthodox Sanskrit University), in Benares, India, and had conferred upon him at Dgarwar, in 1904, the degree of Mahamahopadhyaya (Ph. D.); that at the hearing the United States appeared by the examiner of the Bureau of Naturalization, United States Department of Labor, and contested the defendant's right to naturalization upon the same ground upon which cancellation is sought, cross-examined the defendant and his witnesses, filed a brief in support to his objection to the naturalization of the defendant and when judgment in favor of the defendant was rendered the "examiner" made a full report in writing to the "United States government authorities at Washington;" that nothing was done thereafter "to change, modify, or reverse the said judgment"; that the defendant on the faith of such judgment entered upon the study of law and was on December 20, 1917, after examination by the "bar examiners of the state of California," admitted to practice in the courts of the state of California, and was thereafter admitted to practice in the District Courts of the United States and in this court; that he is a member in good standing in all such courts; that he was appointed by the Governor of California to the office of notary public, from which he is receiving some income; that he has acquired a home in Los Angeles of the value of $15,000; that he married a white woman, born in the state of Michigan, a citizen of the United States, and resides with his wife in his home; that he is the eldest in his father's family, and was entitled to inherit the family home of $30,000 value, together with other properties in his ancestral home valued at from $100,000 to $250,000; that his wife had entered 320 acres of land in Imperial Valley, California, upon which she had spent $1,500 in reclamation and since marriage he has spent $500 additional for such purpose; that if defendant's certificate is canceled his wife will become an alien and lose her right to the land; that defendant will lose his notarial commission and be deprived of his right to practice law in the state courts, as that rests upon citizenship, and a like loss of the federal license to practice; that he has by becoming a citizen lost his inheritance in the old country and his social status.

The defendant in his petition for naturalization gives Los Angeles as his residence; occupation, lecturer and teacher; place of birth,

Ahmedabed, India; emigrated to the United States from Southampton, England, and renounced allegiance to George V, King of Great Britain and Ireland. Upon the record a clear issue of fact was raised. The United States and the defendant had their day in court. The question of fact was distinctly put in issue and directly determined by a competent court having jurisdiction. The court, after timely deliberation, said: "I am therefore of the opinion that the petitioner has succeeded in establishing beyond all reasonable doubt that he is a 'free white person' within the meaning of the Naturalization Act. He will therefore be admitted to citizenship." From a decree dismissing the case, the government appeals.

Samuel W. McNabb, U. S. Atty., and Donald Armstrong, Asst. U. S. Atty., both of Los Angeles, Cal.

E. E. Millikin, Lucius K. Chase, and S. G. Pandit, all of Los Angeles, and C. E. S. Wood, of Portland, Or., for appellee.

Before GILBERT and RUDKIN, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge (after stating the facts as above). This court, in Akhay Kumar Mozumdar v. United States (C. C. A.) 299 F. 240, reviewed decree of cancellation of certificate, and in United States v. Siem (C. C. A.) 299 F. 582, reviewed decree denying cancellation, both actions brought under section 15 of the Naturalization Act. The question of res judicata was not presented or considered in either case. The cumulative remedy provided by sections 11 and 15 (Comp. St. §§ 4370, 4374) in ex parte cases (U. S. v. Thind, 261 U. S. 204, 43 S. Ct. 338, 67 L. Ed. 616) has not been considered by this court or the Supreme Court with relation to final judgments or effect on res judicata where the court had jurisdiction and the United States appeared. In the Thind Case the action in equity was begun within the time in which an appeal could be prosecuted and the effect was in the nature of appeal. No point was made as to procedure or as to res judicata.

It would scarcely be contended that the intent of the Congress was to grant a new trial, except in ex parte cases where a final judgment is entered, when the law provides a remedy enforceable in the courts according to the regular course of legal procedure and the remedy pursued and a status decreed. The Supreme Court in Tutum v. United States, 46 S. Ct. 425, 70 L. Ed. 456, said: "Whenever the law provides a remedy enforceable in the courts according to the regular course of legal procedure, and that remedy is pursued, there arises a case within the meaning of the Constitution, whether the subject of the litigation be property or status. A petition for naturalization is clearly a proceeding of that character."

The judgment being final in a proceeding according to the regular course of law, the giving of section 15 unlimited scope would in effect grant a new trial at the government's election, and as to that the court in De Chastellux v. Fairchild, 15 Pa. 18, 20 (53 Am. Dec. 570), said: "If anything is self-evident in the structure of our government, it is that the Legislature has no power to order a new trial, or to direct the court to order it, either before or after judgment. The power to order new trials is judicial; but the power of the Legislature is not judicial. It is limited to the making of laws; not to the exposition or execution of them. The functions of the several parts of the government are thoroughly separated, and distinctly assigned to the principal branches of it, the Legislature, the executive, and the judiciary, which, within their respective departments, are equal and co-ordinate."

[1] The issue in the trial court was clearly an issue of fact. The defendant asserted a status, "free white person," within the meaning of the Naturalization Act. This status the court determined as a question of fact, in considering the evidence presented and after the issue was fully briefed and argued. The court erred in its conclusions. " 'Erroneous' means deviating from the law. * * * Courts often speak of erroneous rulings, and always as meaning such as deviate from or are contrary to the law, but the term 'erroneous' is never used by courts or law writers as designating a corrupt or evil act." Thompson v. Doty, 72 Ind. 336 at 338. It means having power to act, but error in its exercise. Matter of N. Y. Catholic Protectory, 8 Hun. (N. Y.) 91, 196. See, also, Chemung Nat. Bank v. Elmira, 53 N. Y. 609; Tiedt v. Carstensen, 61 Iowa, 365, 16 N. W. 214.

The question of res judicata was raised in Johannessen v. United States, 225 U. S. 227, 238, 32 S. Ct. 613, 615 (56 L. Ed. 1066). The court said: "The foundation of the doctrine of res judicata, or estoppel by judgment, is that both parties have had their day in court. 2 Black, Judgts., secs. 500, 504. The general principle was clearly expressed by Mr. Justice Harlan, speaking for this court in Southern Pacific R. Co. v. United States, 168 U. S. 1, 48 [18 S. Ct. 18, 27, 42 L. Ed. 355], 'that a right, question or fact distinctly put in issue

and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies.'" And then it was said: "Sound reason, as we think, constrains us to deny to a certificate of naturalization, procured ex parte in the ordinary way, any conclusive effect as against the public."

The court in this decision recognized the doctrine of res judicata, except in ex parte cases, applicable to a naturalization hearing. In Tutum v. United States, Neuberger v. United States, 270 U. S. 568, at page 577, 46 S. Ct. at page 427 (70 L. Ed. 459) Justice Brandeis said: "In passing upon the application the court exercises judicial judgment." In Mut. Benefit Life Ins. Co. v. Tisdale, 91 U. S. 238, 245 (23 L. Ed. 314) the court said: "This certificate is, against all the world, a judgment of citizenship, from which may follow the right to vote and hold property."

[2] It is thus conclusively established by the Supreme Court that a judgment granting a certificate of naturalization is a final judgment. The correctness of the findings to support the judgment does not affect it. Milne v. Deen, 121 U. S. 525, 7 S. Ct. 1004, 30 L. Ed. 980. And it is conclusive as to all media concludendi, and cannot be impeached by showing that it was based on mistake of law. Fauntleroy v. Lum, 210 U. S. 230, 28 S. Ct. 641, 52 L. Ed. 1039; American Express Co. v. Mullins, 212 U. S. 311, 29 S. Ct. 381, 53 L. Ed. 525, 15 Ann. Cas. 536.

[3] In disposing of the issues in the several cases, the Supreme Court did give expression to general principles of law and to the duty and power of courts, or the meaning of provisions of the Act. The point here did not even lurk in the record, nor was it brought to the court's attention, and what was said was obiter dictum, and as said by Justice Sutherland in Webster v. Fall, 266 U. S. 507, 45 S. Ct. 148, 69 L. Ed. 411, cannot constitute a precedent. See, also, New v. Oklahoma, 195 U. S. 252, 25 S. Ct. 68, 49 L. Ed. 182; Tefft, Weller & Co. v. Munsuri, 222 U. S. 114, 32 S. Ct. 67, 56 L. Ed. 118; Wolff Packing Co. v. Industrial Court, 267 U. S. 552, 45 S. Ct. 441, 69 L. Ed. 785.

In Ozawa v. United States, 260 U. S. 178, 43 S. Ct. 65, 67 L. Ed. 199, a Japanese was denied admission by the District Court. On appeal to this court, the question of eligibility of the applicant was certified to the Supreme Court, and the court answered in the negative. In United States v. Thind, 261 U. S. 204, 43 S. Ct. 338, 67 L. Ed. 616, a high-caste Hindu

was admitted to citizenship over the objection of the United States, and a bill in equity was filed within 60 days seeking cancellation, and on appeal to this court after decree, and on certification to the Supreme Court by appropriate questions affecting the applicant's qualifications, the issue was determined. The question of res judicata was not raised. In Tutun v. United States, 46 S. Ct. 425, 70 L. Ed. 455, the only issue was whether an order of naturalization is a final order, from which an appeal will lie, and the court said: "In passing upon the application the court exercises judicial judgment." Chief Justice Taft, in North Carolina R. Co. v. Story, 268 U. S. 288, 292, 45 S. Ct. 531, 533, 69 L. Ed. 959, said: "Coming now to the merits, it may be conceded that the first judgment against the company in favor of the administrator, however erroneous it was in view of the cases of Missouri Pac. R. [Co.] v. Ault, 256 U. S. 554 [41 S. Ct. 593, 65 L. Ed. 1087], and North Carolina R. Co. v. Lee, Administrator, 260 U. S. 16 [43 S. Ct. 2, 67 L. Ed. 104], not having been appealed from, was res judicata."

[4] By the same token erroneously granting naturalization to the defendant, the right to citizenship having been distinctly put in issue, the United States appearing and contesting, and the issue directly determined by a court of competent jurisdiction, the judgment, not having been modified or reversed, cannot now be disputed. (Italics supplied.)

The judgment is affirmed.